Let's wait just a minute. Let everyone get settled. Excuse me, Your Honor. Let's let everyone get settled first for you start. I'm going to start by asking you to pronounce your name because I'm sure that I'll mess it up. Not at all, Your Honor. It's a Lewis. Lewis. All right, Mr Lewis. Thank you, Your Honor. Paul Lewis from the Department of Justice Tax Division on behalf of the United States. Your Honor, we are here on appeal to correct two fundamental errors in the proceeding before the district court. The first error concerns the district court's instructions to the jury on two critical aspects of the question before the jury in this case, to wit, whether R S B C O had reasonable cause for its failure to timely file its information returns. The second assignment of error is the court's award of attorney's fees to R S B C O. Regarding the jury instructions, there are two critical errors that the court made. The first concerns the court's instructions regarding whether there were mitigators present in this case. And the second concerns the court's instruction whether there were events beyond the filer's control present in this case. This court should reverse and remand for a new trial if it finds that either one of the instructions was erroneous. With regard to mitigators, the court's instruction was limited solely to the following. The law does not define mitigators. However, a mitigator is generally defined as something that lessens the gravity of an offense or mistake. That instruction was erroneous because it omitted two key aspects of the controlling regulation which define what a mitigator is. The regulation provides two examples of mitigators. The first is when the filer has never been required to file in the past. And the second is when the filer has been required to file in the past and has an established history of compliance with its filing obligations. The court's instruction omitted both of those, um, uh, elements which define what mitigators means under the controlling regulation. The regulation also explains that in determining whether a filer has, um, an filing correctly, significant consideration is given to whether the filer has incurred any penalty in prior years under the same statute. And in this case, the court excluded evidence of the fact that RSPCAO had, in fact, incurred penalties in prior years. And it also did not instruct the jury that significant consideration should be given to that fact. And so the admission of all three of those, um, regulatory requirements for a mitigator in order to establish reasonable cause renders that jury instruction erroneous to such a degree that the jury was not properly instructed. As we argued in our brief, because the statute defines mitigators with respect to these two items, the focus of the, of the inquiry is on the filer's history of compliance, as well as other factors bearing on the filer's ability to comply. The focus should not be on other things, such as those that were argued by RSPCAO at trial and here on appeal, such as . . . What does, what does the language mean, including but not limited to? I mean, that's the, that's sort of the preface before you get into the more specific provisions of that regulation. Yes. I like the tie, by the way. Thank you, Your Honor. I was going to say the same. Um, well, Your Honor, I would say this. Included but not limited to certainly means that there, there may be other circumstances that could be presented other than those two specifically listed in the statute, but any other mitigators that are presented should be akin to those that are listed in the statute. But where is the support for that? I mean, that's, I think that's probably my sticking point in my mind is, is how capacious is including but not limited to? Well, Your Honor, in this case, it's not capacious. I mean, we cite two, two, two cases in our brief, um, which address this issue specifically. The first is Post v. St. Paul Travelers Insurance from the Third Circuit in 2012, where the, the court, um, determined that, uh, general expressions such as including but not limited to that precede a list of specific items should not be interpreted in their widest context but apply only to persons or things of the same general kind or class as those specifically mentioned in the list of examples. Um, the, the District of Columbia Circuit, uh, had a similar holding in the United States v. Philip Morris case. Um, and also in the case that we cite from the Supreme Court, the Bloat case, um, uh, which we cite more, um, under the prong related to the impediments question or the events beyond the filer's control question. The court in that case, however, did also address including but not limited to language. And the court there said, if you interpret including but not limited to language so broadly as RSPCO argues here that it, it renders the definition of mitigators and impediments unlimited is the language that RS, RSPCO uses in its brief. In effect, what that does is render the specific items that are listed after included but not limited to as surplusage. And that's something that the court should definitely avoid doing in interpreting both a statute and a regulation. If the language including but not limited to truly means that the, that the term mitigators and events beyond the filer's control are unlimited in any way, then there's no need for any description. Any description that comes following that language is, is irrelevant. It adds nothing to, to those terms. And so I think that's the reason why the, to the extent that someone wants to argue something else, it needs to be something akin to those factors that are listed. But in, in, in your, uh, response just now or your argument just now, you sort of conflating mitigators and impediments. I mean, I, I read the, the regulations about impediments to be a little bit different than the one about mitigators. In other words, it seems that you may not, you may not want to conflate those, right? I mean, in other words, including but not limited to, and here's a couple examples of mitigating factors, doesn't necessarily get into the regulation about impediments. But am I, am I, am I segregating them improperly or? Not at all, Your Honor. They are in fact two separate independent requirements under the statute. So it's okay to look at them as distinct? Excuse me, Your Honor? It's okay to look at them as distinct things? Yes, they are definitely distinct. In order to a filer is required to show first that it acted responsibly both before and after the events that occurred. Is the government challenging that here? I mean, the jury found that. We're not challenging that on appeal, Your Honor. So we're looking at, it's an either or. If there's a mitigator, good to go. If there's an impediment, good to go. Correct. Except, Your Honor, and this is why I mentioned this, um, at the, at the beginning of my presentation, because of the way that the verdict form was written here. I was about to ask that. If the court finds either one of the instructions improper, then it needs to, to reverse. Because on the verdict form, there were only two questions asked. First, did RSVCO establish that it acted responsibly? And second, was there either a mitigator or an event beyond the filer's control established? Those two things were one item in the special verdict form. The jury said yes. Correct. So we're thinking about it correctly. If one of the instructions is problematic, the other one, maybe it's okay. We really can't tell what the basis of the jury verdict was. That's correct, Your Honor. In that circumstance, then a reversal, a remand for a new trial is required. Um, turning to the events beyond the filer's control, uh, the court's instructions . . . Let me . . . Yes, Your Honor. I'm slow catching up, so getting back to the jury instruction. You're saying that, that jury instruction was an improper instruction? Yes, Your Honor. Did you submit a different one that the court refused to give? No, Your Honor. On mitigators, the government below took the position that no instruction should be given at all. Because the court had excluded the only relevant evidence to the mitigator examples as listed in the regulation, meaning the filing history, the court did not allow the government to introduce evidence of the fact that in the prior years, RSPCO had received penalties under the statute as well because it found that it would, uh, it had the potential to confuse the issues for the jury. And so when it came time to argue about the jury instructions, the government took the position that no instruction should be given on mitigators because the evidence wasn't there. Uh, we also believe that the instruction on events beyond the filer's control was incorrect. Um, again, as stated in our brief, there are two aspects to that particular instruction. Uh, the court first instructed the jury that the actions of an agent could potentially constitute an event beyond the filer's control, but it did not explain as required under the regulation that the agent himself must demonstrate that he satisfies one of the reasonable cause exceptions in order for that to apply. Um, regarding, uh, what I think is the meat of the case was Mr. Smith's illness. Um, the court instructed the jury incorrectly that serious illness standing alone can constitute an event beyond the filer's control. It omitted three at least of the, of the requirements or obligations that a filer must show in order to establish that that led to an event beyond the filer's control as contemplated by the regulation. In fact, what the regulation, uh, allows as an unavailability of business records and that unavailability may be caused by an intervene, a supervening event. And one such supervening event may be the, uh, serious illness or death of the person responsible for the business records. And so because the court's instruction implied to the jury that this serious illness standing alone could be an event beyond the law and it, and it, and it did not properly lead the jury in terms of what law should be applied to the facts as presented. Um. The impediment regulation is more layered than the mitigators regulation. Yes, Your Honor. And if I can summarize your argument, the district court collapsed a layer or two in the impediment instruction. Yes, Your Honor. Not only collapsed a layer or two, um, but also left out a key element, which is, um, to the extent that, that someone relies upon, um, incapacity of, of, of a person or serious illness of, of a person such that they're unavailable. The unavailability must continue during the entire time period that's relevant to the inquiry. And here the court, again, did not instruct the jury on that, uh, aspect of the, of the regulation as the government requested in its proposed jury instructions. Um, but there was in fact evidence from which a jury could have concluded that Mr. Smith, despite his illness was not unavailable during this entire time period. Um, I would like to spend a few minutes, uh, of my opening time to discussing the attorney's fees issue as well. Um, as we know in our brief, um, we believe that the court abused its discretion in awarding the, uh, attorney's fees here. The, the most significant error that occurred was that the court incorrectly applied or invoked the presumption that the government's position was not substantially justified based upon its finding or conclusion that the government had not followed its applicable published guidance. And in doing so, the court did not correctly apply the statutory definition of applicable published guidance. The statute defines applicable published guidance to include certain specific items, regulations, revenue rulings, revenue procedures, information releases, notices, and announcements, or certain documents that are issued directly to the taxpayer, including private letter rulings, technical advice memoranda, and determination letters. None of those were at issue in this case. Instead, the court focused on purported violations of the Internal Revenue Manual and what is known as the Taxpayer Bill of Rights, which is a publication issued, uh, by the IRS and is also, uh, has since been codified at, um, in, in the Internal Revenue Code. It's sort of counterintuitive that those items are out there for the public to see and yet they don't qualify under the definition that you just read. Well, Your Honor, I think that both are qualitatively different. I mean, first, I, I think our, our main point here is that this is a clear statutory definition. It lists very specific items, all of which have a specific meaning, um, that are included within the definition of applicable published guidance. Neither the manual nor the Taxpayer Bill of of plain statutory interpretation, the language is clear, they aren't included. I think it's also important to remember that this fee statute is a waiver of sovereign immunity that must be strictly construed in favor of, uh, not waiving sovereign immunity. Um, and, and second, uh, I think qualitatively the Internal Revenue Manual and the Taxpayer Bill of Rights are not of a kind with the items that are listed here. The Internal Revenue Manual, it's been held many times, is merely a guide for employees in terms of exercising their duties. It's amended frequently, it's amended regularly, and courts have, have regularly held that it, it creates no rights in the public. It creates no reliance interests whatsoever. And the Taxpayer Bill of Rights has been held to be nothing more than a recapitulation of general principles of specific rights that may be found at other places in, in the code. And so, again, standing alone by itself, it is not of the type, the type of guidance that, um, that is contemplated by the statute such that the presumption could be invoked by the court. I see that my time is about to expire. Yes, thank you, Mr. Lewis, and you have saved time for rebuttal. Mr. Woodard? May it please the Court, Russ Woodard here for RSVCO. The trial court's ruling should be affirmed for two reasons. First of all, the government waived any objection as to the propriety of the jury instructions, but even if they had not, the jury instructions were correct as a matter of law. And secondly, the attorney award was correct in as far as the government's position was not substantially justified. Touching briefly on the waiver issue, we highlighted that in our brief. Um, the government responded with the Bender decision from 1993 from this court. Rule 51 was amended in 2003, and it provides entirely different context, the comments to which specify. The provisions on the time to object make clear that it is timely to object promptly after learning of an instruction or action on a request when the court has not provided advanced information as required by Subdivision B-1. The need to repeat a request by way of objection is continued in new Subdivision D-1B, except where the court made a definitive ruling on the record. Here, there was no objection after learning of an instruction. Here, there was no objection after the court made a definitive ruling. We've cited in brief three decisions post the 2003 amendment. The Kim decision from 2022, the Marsh decision from 2010, and the Turner decision from this honorable court in 2008, clarifying under Rule 51, the objection to any instruction must be made on the record at trial. No case is cited by the government post, um, 1993 in the Bender decision on this issue. So the version of Rule 51 in the Bender decision is different than the version of Rule 51 before the court here today. And that makes sense because any lawyer who's tried a jury trial, any judge who's presided over one, understands that joint submissions prior to trial look glaringly different than what ends up ultimately being presented to the jury. Quite frankly, that's why I was surprised to see this listed as an assignment of error. We pointed out in the record where they actually drafted some of the key definitions. In 2360 of the record, they drafted the definitions of impediment that was accepted by the trial court. In 2687 of the record, they clarified, their trial counsel said, look, we have one remaining issue as to the jury instructions, and it was a curative instruction which they received. So that's what had me scratching my head when I saw this listed as an assignment of error. Assuming they had properly, uh, reserved this issue. Your position as I understand it is, I mean, they fully objected in the pretrial order. Correct. They objected to every pretrial. And the jury instructions or the competing instructions were submitted at that point, correct? I mean, in other words, we knew what the instructions were proposed to be. Yes, sir. Your position is they had to actually renew it. That wasn't during trial. That had to happen during the charge conference on the record or whatever. There was an off-the-record charge conference, right? Yes, sir. And I believe Judge Doty said, look, if you all want to have a court reporter come back, you're more than welcome to, but there's a charge conference. Did the government object in the off-the-record charge conference? They did not. That's what, I left there thinking they got what they wanted. And so . . . Did they ever waive the earlier objections in the pretrial order? Did they, you mean . . . Did they ever recede from them? No, sir. Because that's a duly worded question. So they didn't withdraw the objection or anything like that? There was no explicit withdrawal. No, sir. And so . . . but during the pretrial conference, we go in and typically there's prisoner swaps of kind. There are concessions made where you get a final product. And to Your Honor's question about the verdict form, I'd like to quickly note that too was drafted by the government, and that's also not listed as an assignment of error. Well, what do we do with that? I mean, you ascertained the argument. You heard me . . . Yes, sir. If one of these instructions is infirm, even if the other one is good to go, we can't tell on what basis the jury checked that line. First, I'd point out they drafted the verdict form. And then secondly, I would point out under the Puga decision, that standard of review, and that's from this court, PUGA 2019 Fifth Circuit, it gives the standard of review asking first, does the charge as a whole create a ineradicable doubt as to whether the jury was properly instructed? And second, even if there is error, there's no reversal unless the entire record shows it affected the outcome of the case. As Your Honor pointed out . . . Well, but if the impediment instruction left out some of the considerations that had to be found for there to be a finding of beyond the filer's control, and so the instruction was flawed, we don't know if the jury found that there was an impediment, but it was an improper finding, how can that verdict be upheld? Because I believe this does show, even if that language had been included, Your Honor, that this was beyond the control of the filer insofar as there's a reference made as to when incapacity started, when it began, that needed to be presented on 554 of the record and 680 of the record. Smith testified that he was suffering from severe depression with suicidal ideations during the entire time frame that would have included from his initial filing on April 1st of 2013 through his corrected resubmission with the safe harbor delay of approximately 45 days late. I'd like to take a step back to here where this is a unique case when we're talking about statutory interpretation and regulatory interpretation. The IRS issues the regulations. They are tasked with drafting these regulations in 601.101, and Judge Smith, I believe in this morning's first case on the docket, you mentioned that red flag, I believe your word was it raises concern when there's a case cited in the appellee's brief that's not addressed in the reply. We cited a block-quoted, underlined, emboldened, martial decision from this court in 2015 holding if tax statute terms are undefined, any doubts must be resolved against the government and in mentioned in the reply brief, and that's because they chose, the IRS chose not to define two of the key most critical terms. You've got responsible, impediments, mitigators. They're not challenging responsibility, so we have to show either or impediments and mitigators, and they've chose to leave those undefined, and the Bittner decision from the U.S. Supreme Court held when Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning. Here in this very same set of regulations under 6724.1, there are examples that are modified by including and examples such as impediments and mitigators that are modified by including but not limited to. But do you agree with counsel opposite that I'm thinking about the impediments regulation, that it's not sufficient simply to show, well, Mr. Smith was sick and therefore unavoidably absent during the time of the filing? I mean, you have to show more than that, correct? Yes, sir. I don't think, and I don't have a copy of the instructions that were ultimately given to the jury right here in front of me, but I don't think you can just say this gentleman was sick and that interfered. I think you have to go much further than that, and I think we did present that evidence at trial. And when a court is tasked, such as the trial court here, with undefined terms, this court in the Camacho decision, the Fifth Circuit instructed to apply the common and ordinary meaning, and that's what was applied. I'll start first with mitigators. A mitigator is generally defined as something that lessens the gravity of an offense or a mistake. First, the 45 delay caused no harm or benefit. We've cited a quality medical decision and the Tysinger decision, each of which rejected penalties or refunded penalties to taxpayers. In a Tysinger case holding, the taxpayer had nothing to gain from not filing timely. Sloppiness is not the same as willfulness. It's not surprising that the employees on the front lines failed to gain is a common-sense mitigator. The penalty here was based on 26 dash marks. This was not a failure to report a proper address, a proper name, a miscalculation of amounts owed. They were just errant. In 21,574 returns, 26 of them had dash marks, and because they were submitted in batches, the entire batch was rejected as if all 21,574 had errors. And incidentally, USC 266721 provides a safe harbor for de minimis errors, and as I understand that, if there's no discrepancy in the dollar amount or material information, then it's treated as filed. Unfortunately here, because of the IRS's automated system, nobody knew at the IRS what the nature of the errors was because nobody saw it. If they had, or if the algorithm could factor in, hey, this is just dash marks. This is not a misrepresentation as to the dollar amount. It should, by statute, have treated that as automatically filed. And so the key there is the nature of the error. The significance of the error is an acceptable mitigator. This would be the first case, reported decision, where a taxpayer attempted to timely file, to be penalized under 6724. Yes, 6721, 6724. And the IRS, for over eight years, could have reviewed, processed, analyzed the returns manually. And for decades . . . I'm going to stop you there, because whether that's feasible for the IRS to do that or not, I mean, if your client filed 26,000, 27,000 of these information or returns, there are literally millions of these things coming into the IRS. But the company itself could have done some things also. And the IRS goes through in its briefing some very easy things. I mean, this only went to Smith's email, right? So nobody else monitored it. It would have been very easy to have somebody else monitor the situation, check on things, whatever it was. So, I mean, to the extent you want to hold the IRS to the standard of manually reviewing things, there are certainly some things the company could have done itself to have vastly mitigated, maybe that's a bad word to use, the time it took to get these things done and right and taken care of. That's a fair point, Your Honor. And I think if we had companies and businesses that were perfect . . . I'm not asking for companies to be perfect, but I mean, this company waited a couple of years to do anything, and it was when the IRS gave a notice that it was about to levy, that's when things became serious, right? I mean, this sat around for a long time. The IRS, my client did not learn of the penalty until after . . . I know the letter was in the drawer, but I mean . . . Yes, sir. Still, you're dependent upon one employee and you find out, but I think a pretty good passage of time came after the letter was discovered. The letter was discovered, I can tell you exactly, Your Honor, November 12th of 2014, and that's after Smith had been terminated and his desk was being cleaned out, and so . . . But wasn't it like 2018 before the company really made any effort to pay or file or . . . No, sir. There were communications with the IRS and my client was the impression that this was all good, and then they get the letter in 2018, and so there was no action taken because there was nothing to be done. We were told that, okay, everything's fine. When did the letter come saying, we're going to assess penalties and interest and all that? It looks like January 25th of 2018, and then the initial assessment would have been October 12th of 2015. So the initial assessment comes in 2015? Right. And I think what came in 2018 was the notice of levy, we're about to collect this. Correct, and during that period of time is what I'm saying, there were conversations, and it was, okay, that's just a misunderstanding, and so the letter in 2018 was when things got very serious of, oh, goodness. Who told you it was misunderstanding when the IRS sent you the notice in 2015 that we're going to assess penalties? I don't have that person's name handy, Your Honor. Where is it in the record? I don't have that record site. Is it in writing or is it testimony? I believe that's in our complaint. Okay. Well, Your Honor, I believe where I left off was, I was saying they could process the original returns, and I'm moving on from that. RSPCO fixed the problem before learning it existed. Imagine if we had left the proverbial fox in the hen house for years before or years after. This gentleman, Mr. Smith, had timely filed, correctly filed both the year before and the year after. We presented evidence that he was highly educated, highly qualified, had spent 13 years in the banking industry with a clean credit history, bankruptcy history, no criminal record of any kind, and both the year before and the year after this incident, he filed correctly showing that he was capable of filing, and there were other employees, I believe, Sherry Banks, and the other name escapes me, who had fire system access, but they did not receive the reminder emails. The only one who did was Mr. Smith. Moving to impediments. Again, this definition was drafted by the government as a hindrance or an obstruction. That is a plain and ordinary meaning per Camacho. It's undisputed that Smith suffered a severe illness. He gave highly specific suicidal ideation testimony. Even the government's own counsel conceded on 2717 of the record, I'm not saying that Mr. Smith was not depressed. I was here during his testimony, but his condition is not on trial. We cited the Schaeffer decision and the Meyer decision showing that mental health is an acceptable impediment. No response in brief to either case. But mental health alone wouldn't be an impediment. You'd have to show the unavailability, and then you'd have to show how it impacted the filing. I mean, the other things that are set out in the regulation, right? That's correct, and I believe that was at least the showing in the Schaeffer decision and the Meyer decision was that it had directly impacted the ability to file. Before we run out of time, let's talk about attorney's fees. Yes, sir. The court relied on the IRS manual and the Taxpayer's Bill of Rights. Those aren't in the statute as published IRS guidance, so how do you get around that? How do you address that? Sure. The regulations are published guidance. The REM factors, responsible behavior, impediments, mitigators. The IRS corporate representative, Ms. Karen Carroll, testified the penalty has no thought process whatsoever. It does not even consider whether RSPCO behaved responsibly, whether it suffered impediments, or whether it could show proof of mitigators. From 2013 until trial, a human being with the IRS has never looked at this case administratively to determine if any of those regulatory factors apply. That's because when this thing was first assigned to Jason Leonard in 2018, he resigned. The claims have been left out in the ether with no one looking at it. The only ruling we've gotten from the IRS is a robot that said you owe this penalty because you're X amount of days late. That robot is a thoughtless procedure. We don't even have to get to the IRM. We don't even have to get to the Taxpayer's Bill of Rights. Look at the regulations. There's no proof that the IRS ever considered whether any of the three REM factors apply. Judge Smith, to your question about it being published guidance in certain settings but not here, Mr. Lewis, in the Bittner decision before Justice Gorsuch, was asked what doctrine, what piece of published guidance supports your position? In that scenario, because the IRM supported the IRS's position, Mr. Lewis responded, you can find this from the OEA project, the critical guidance document is the Internal Revenue Manual. It is publicly available to taxpayers. When the IRM is favorable to the IRS, they want to cling to it. They want to promote it. As Justice Gorsuch noted, when it's bad for them, such as in this case, they treat it like garlic to a vampire. In this court, in the BNSF decision, 2023 case, held that agency action is invalid if it fails to consider relevant data and articulate a satisfactory explanation. We have still never gotten an explanation beyond the robotically generated letter saying you were 45 days late in what information was considered, what analysis was considered. It's because there has been no analysis. There's been no consideration whatsoever. The Lennox decision from the Fifth Circuit in 1993, it reversed the tax court and found that there was no substantial justification, finding that reasonable in the IRS context depends on from the apex at the initial determination. Here from the initial determination to present date, there's been no analysis. It's been a machine that does not even factor the mandatory regulations. I see my time has expired. If your honors have no further questions, I'll return to my table. All right. Thank you, Mr. Woodard. Mr. Lewis for a vote. So why don't you respond first to, you were just quoted by opposing counsels. Well, your honor, I actually think that he intended to refer to my colleague, Mr. Guarnieri, who represented the United States before the Supreme Court in the Bittner matter. He was referring to a colloquy between Mr. Guarnieri and Justice Gorsuch in that case. It is true that I counseled on that case before this court, and I assisted Mr. Guarnieri in his representation. Okay. What about what was said then by your... Well, first of all, your honor, we addressed this issue in our brief. When Justice Gorsuch referred to like garlic to a vampire, he was not referring to the Internal Revenue Manual. He was referring to the doctrines of Chevron and Skidmore deference and commenting on the fact that the government had not asserted any kind of Chevron or Skidmore deference in that case. Why we had not done that there. There was some mention of the Internal Revenue Manual in that case. Bittner is a wholly different context than the case presented here. It's not a tax case. It's not under Title 26. It's under Title 31. It was a case regarding penalties for failure to port foreign bank accounts under the Bank Secrecy Act. There was no reasonable cause issue at issue there. But is it published guidance or not? Uh, your honor, it is not applicable published guidance within the definition of Section 7430 for purposes of determining whether attorney's fees can be assessed against the United States. Was the representation before the Supreme Court that it was published guidance? It, well, certainly it is. It is published and that is a correct statement. It is available for the public to see and it is guidance for internal IRS employees to follow. The issue in which that statement arose was the assertion by Mr. Bittner's counsel that the government had taken a position consistent with Mr. Bittner's position in various different sub-regulatory publications, issuances, explanations of what the Bank Secrecy Act penalties may be and how they may be imposed. And Mr. Guarneri's response invoking the Internal Revenue Manual was only meant to say to the court, your honors, to the extent that all of these other materials are being invoked, we want the courts to understand that in terms of guiding imposition of these penalties, which is actually a discretionary thing, unlike in this case where they're mandatory, they're automatic, the critical guidance which guides the Internal Revenue employees that are issuing those penalties is the Internal Revenue Manual and there the IRS took a consistent position throughout the entire existence of the Bank Secrecy Act that the penalties should be assessed on the basis on which we had asserted in that case. Now, the Supreme Court ultimately agreed with us in that case, disagreed with us 5-4, but it's just not on point at all and I think the most salient reason it's not is that Mr. Guarneri was not addressing the definition of applicable published guidance as is contained in Section 7430 for purposes of issuing penalties. I do want to try quickly to respond to some of the points that my friend made during his presentation. The fact that no one has purportedly looked at this penalty. First, the reason why a set by Congress in statute. It's a mechanical penalty that is calculated on a daily basis at an established rate by Congress by statute. As soon as it's triggered, when they fail to file, the penalty starts accruing. And so that's why it's mechanically issued. The fact that no one considered whether RSVCO had reasonable cause is because they never responded to the letter that the IRS sent them saying, we propose to impose this penalty on you in August of 2014. Please let us know if you think there's a reason why we shouldn't, including reasonable cause. They never responded. They never responded. They discovered that letter, they say, in November of 2014. The IRS imposed the penalty in October of 2015. There was nothing that happened during that entire period. There were not any conversations or anything? There's nothing in the record, Your Honor. Nothing in the record, Your Honor. And then, from 2015 to 2018, there's also nothing in the record indicating that there were any conversations between RSVCO and the IRS. And you're careful to refer to the record, and that's what we always want people to do is to refer to the record. Is it your position that, in fact, there were no such conversations inside or outside the record? As appellate counsel, I have no basis on which to make any statement as to whether there may be something outside the record. I simply don't know. There's nothing in the record that says that there were. You may have 45 seconds to wrap up anything that you'd like to cover. In 2018, RSVCO did, in fact, receive an administrative proceeding in the Internal Revenue Service. They requested a CDP hearing before the Office of Appeals, which has since been renamed the Independent Office of Appeals. The Office of Appeals considered RSVCO's request for reasonable cause relief. They submitted a very detailed, lengthy explanation as to why they thought they were entitled to reasonable cause relief in this case. The Office of Appeals considered that, offered them, in fact, a small concession on the amount of the penalties, which RSVCO rejected, and so the Office of Appeals issued a determination letter to RSVCO denying their request for relief. And that letter was issued to them in July 27, 2018, and that's at ROA-2903. So it's simply not the case that there was no consideration by the IRS before this came to trial. There was. And the position that the government took at trial is wholly consistent with the determination by the Office of Appeals that there was no basis for reasonable cause under the regulation in this case. Thank you. All right. Thank you, Mr. Alulis. Your case and all of today's cases are under submission, and the court is